May it please the Court, I'm Randolph Moss on behalf of the California Table Grape Commission. The judgment of the District Court can and should be affirmed on three separate grounds. Let me start with government speech. Here, the speech at issue is government speech for three independent reasons, and none of those reasons turn on the degree to which the Secretary of the Department of Food and Agriculture or his designee attends particular meetings or is involved in designing particular ads. First, the Commission is itself a governmental entity, and therefore its speech by definition is governmental. The test, as noted a few moments ago, is defined in the Supreme Court's decision in LeBron, which dealt with the question of Amtrak, which is itself a corporate entity. Is the government for purposes of the First Amendment? And the Supreme Court said that an entity is part of the government for purposes of the First Amendment if it was created by special law for furtherance of a governmental objective and if the government retains for itself the permanent authority to appoint a majority of directors of that corporation. And all three of those criteria are satisfied here. The Ketchum Act created the Table Grape Commission. But that, you know, that is in some tension with the bar case where, you know, Amtrak, of course, isn't a situation like the grapes or the bar where you have people paying in money. So how do you square just taking that little narrow language and saying, okay, government entity game over with the bar case? Well, first of all, with respect to the source of the funding, Your Honor, I would point to the language in the Supreme Court's decision in the livestock marketing case where the Court says the source doesn't matter with respect to the funding for purposes. Now, if you're going to rely on livestock marketing, I think you really have to pay attention to what Justice Scalia said. Every word is approved by the Secretary. Every word. Is that your situation? Well, Your Honor, it is not our situation here, but — Well, that's what he focused on. He says it again and again. It isn't some extra. It's what he is saying is the heart of the case. I disagree, Your Honor. I don't think it's what he was saying. Well, Your Honor, you may disagree, but you've got a problem there. Well, I don't think so, Your Honor, for a couple of reasons. One is I don't think it's by any means the heart of the case. I mean, the heart of the case was the Court's focus on the fact that there was a legislature that defined the message and that the government maintained control. Well, that's what the Supreme Court said, but you can interpret. I wanted to ask you, are you familiar with the acronym QUANGO? No, Your Honor. Well, I must say I wasn't particularly, but my law clerks drew it to my attention, and I found it was a well-known acronym, and it's defined in Wikipedia. And I want to ask you why you are not a QUANGO. Uh-oh. QUANGO is Q-U-A-N-G-O. It's a quasi-nongovernmental organization. It's an organization to which the government, according to Wikipedia, has devolved some governmental power. And it is often used with a negative implication, implying poor management and lack of accountability. And as I read about the Grape Commission, I thought, my goodness, they're talking about the Grape Commission. Why aren't you a QUANGO? Well, Your Honor, both because there is not poor management or lack of accountability with respect to the Grape Commission. And I want to come back to your question. Who are you accountable to? Accountable to the Department of Food and Agriculture and to the Secretary, because the Secretary has the authority to remove any member of the board, and the Supreme Court has noted and this Court has noted the authority to remove is the authority to control. How does the Secretary review the board? How does it review the board? Yeah. Well, the Secretary — How does the board account to the Secretary? Well, that's the Secretary's decision of how the Secretary wants to go about doing that. Does it really account to him? Excuse me? Does the board account to the Secretary? The board is, as a matter of law, accountable to the Secretary. Now, does it account to him? I'm not sure that I entirely follow. You know what the word accounting means. You report to somebody. Well, Your Honor, the commission does report to the Secretary in certain respects and not in other respects. But the Secretary has complete — What? Excuse me? What does it report? For example, Your Honor, there is audit authority with respect to the conduct of the affairs of the table grade commission. But, Your Honor, I really do want to get back to — Well, I was asking about accountability, and I wanted to understand. Well, Your Honor, I think — I don't think you've explained it very much. Well, Your Honor, I think the key point about accountability here is the question of whether the State is accountable. Because if the State can control the conduct of the table grade commission, and if somebody is unhappy about something the table grade commission is doing, the State is accountable for that. If there's somebody out there who thought the table grade commission ads were inappropriate in some way, and that has never occurred, but if someone said, those ads are offensive to me, it would not be sufficient for the Secretary to simply say, you know, I didn't edit that ad. He has the authority to control the ads. And if he doesn't do so, he's still accountable for them. And that's the structure of the Supreme Court's analysis in this context. But getting back to Judge McKeown's question about distinguishing Keller and why this case is different than the State bar. First of all, Keller, of course, was decided before LeBron was decided, and thus it's not surprising that the Court in Keller doesn't get into applying the LeBron standard in that context. But significantly, the State bar, only 16 of the 22 members of the State board were not appointed by any government official. So there was not the same accountability that exists under the LeBron standard. But in addition, the State didn't in any way define the messages that were at issue. You know, the objections in the Keller case were to lobbying over things like a nuclear freeze, special education, low-income housing. And it wasn't a case like this case where the State specified, we actually want to create a commission or create a bar, and we want it to actually go out and engage in lobbying on special education, to engage in lobbying on the nuclear freeze. Here, the State created the Table Grape Commission and directed that the Table Grape Commission run ads promoting table grapes and their dietetic and healthful qualities. And that's exactly what the Table Grape Commission has done. So has any court taken LeBron and said, here's the indicia of a government entity, these match, end of case, therefore government speech, in any of these kind of commission or type cases? Your Honor, as Judge Noonan noted earlier, this is a relatively new area of the law in which the courts have been moving somewhat incrementally. I don't believe there has been a case where the Court has resolved it simply on a LeBron standard by applying LeBron, with the exception of the Court below. But here, this is a case in which the Court has resolved it. But then if we didn't want to go there, we would then have to go further to what Judge Noonan is talking about, which is accountability and control, correct? Well, I think that if one puts aside the plaintiff's concession, that the Table Grape Commission is itself the government. And concludes that the LeBron test doesn't apply where the Supreme Court quite sweepingly articulated the test. And I should say where the Supreme Court in livestock marketing itself applied a version of the LeBron test and started its analysis by saying, here we look at the Beef Operating Committee. And there are not a majority of the members of the Beef Operating Committee that are appointed by the Secretary of the Department of Agriculture. And therefore, because a majority of the members of the Beef Operating Committee are not appointed by the Secretary of Agriculture, we go a step further and we're going to assume for purposes of the decision that the Beef Operating Committee is not a governmental entity. But implicit in that is exactly the LeBron analysis. But you're right. If the Court were to conclude that the Table Grape Commission is not itself the government, then you would go a step further. We would say the next step, even before you get to the step of the authority to control, would be the question of what exactly it is that the plaintiffs are challenging here. And the message that the plaintiffs are challenging here is not a message that was defined by the California Table Grape Commission. What they're objecting to here is a message defined by the California legislature in the Ketchum Act itself. The plaintiffs don't challenge any decision made by the Table Grape Commission. The statute itself, as indicated, specifies that the commission not only has the authority, but the duty to run ads to promote the sale of fresh grapes and their healthful properties. And we produced some samples of the ads at the supplemental excerpts of records 755 to 76. And that's just what they do. They promote grapes and the healthful properties. They do just what the legislature directed. And there are stipulated facts in the case which show that there's not a dispute with respect to a decision the commission has made, but rather with the decision the legislature made. The stipulated facts at excerpts of record, page 911, say that all of the ads are intended to promote the sale of fresh grapes. They don't promote other products. They don't disparage other agricultural products in California. The commission has not run political or ideological ads. The ads have been in good taste, not misleading and false. And most importantly for present purposes. Well, this is coming out of that kind of long list of the statute of the promotion of fresh grapes, blah, blah, blah. No. What I'm referring to here, Your Honor, are actually the stipulated. No, I understand. But the fact that it's that they're doing what the statute tells them to do as opposed The commission is coming out of that statute that tells them to do research and dietetic and promotional healthful grapes and that. 65500? Yeah. 65572 and in particular subsection H. Can I ask you this? Because this is really not an issue raised by your opponent, but it certainly crossed my mind as I read your position. Where does the government get the power to go into the grape business? Could it go into the — I was thinking of analogies. Suppose it decided that it should promote the sale of the various types of Coca-Cola. Royal Crown Cola. Right. Pepsi Cola, Coca-Cola. Could it create a cola commission and go into the cola business? Well, I think it might be able to do so, Your Honor, particularly if — Well, yes or no? Well, I think yes, Your Honor, if, as is the case here, you were dealing with a critical portion of the state's economy. I mean, you know, the Supreme Court in the Amtrak case recognized that Congress had the business of getting into the railroad business. Here you're dealing with programs that go back many years that are critical to an absolutely essential portion of the economy in this state. In 2004, I believe $38 billion — So we have a car commission? Well, we may before we know it, Your Honor. But I do think that it would be certainly a legitimate thing for the federal government to say, you know, we've got a huge problem in this country, and we can do one of two things when it comes to cars. We could continue to pump taxpayers' money into salvaging these car companies, or you know what we could do is we actually could get a commission together, a government commission. We're going to appoint — we're going to have the Secretary of Transportation appoint people to this commission. And what we want to do is try and turn around attitudes in this country about American cars and convince people they ought to be buying more at the beginning of the New Deal. Some of this legislation comes from that. All these questions are asked. What business is it of the government to get into setting up all these committees and commissions, which President Roosevelt did? It's a Republican question. Right, yeah. The Republicans don't like this. The people and the Democrats do. But I don't think anyone is seriously questioning the authority of the government to set up a great commission. Right. I said the authority. But, Your Honor, I think so that — It's not an issue. I've taken longer than I should getting back to your question, Judge McEwen, about the question of the actual control. Because I think that is our third argument. And the third reason why we believe that the speech of the table grape commission is government speech, and that is because it is subject to control of the Department of Food and Agriculture. And, Judge McEwen, you asked during Mr. Layden's argument whether that question, the question of control, is a question that is defined by practice or by statute. And we believe that the Supreme Court cases make clear that what is important is the statutory authority, as well as decisions of this Court. I mean, this Court made clear in the Paramount decision, and this is getting back to Judge Noonan's question about livestock marketing, and whether what Justice Scalia found in livestock marketing about the actual review of every word of every ad, is that required? Is the question. And in livestock marketing itself, the Court said that what was present there was more than adequate. And, Judge Noonan, as you indicated earlier, this is a new area of the law, and it's an area where the courts approach it incrementally, and they decide the case in front of them based on the amount of money. In that case, that was present, and Justice Scalia relied on those facts but said it was more than adequate. But when this Court came to the Paramount decision, where there was less, less involvement, this Court said that the question doesn't turn on whether a government employee has edited each ad or has rejected particular ads or even actively participated in the meetings. This Court said that livestock marketing does not set up, does not define a minimum. But here, I think the argument is that grapes fall below pistachios in terms of even statutory control. Well, I'm glad you raised that, Your Honor, because we think that's absolutely not the case here. And, in fact, if anything, there's greater control here than in pistachios. The courts have widely recognized that the power to remove is the power to control. That's what the Supreme Court held in the Boucher case. That's what this Court held in Silver v. the United States Postal Service. And in the Boucher case, the Supreme Court held that the Comptroller General was answerable to the Congress because the Congress could pass a joint resolution, which had to be signed by the President, to remove the Comptroller General, and that authority was enough to make the Comptroller General answerable to the President. But it's clear that that power to remove is the power to control, and that's present here. And for that reason, the Secretary can dictate what the Table Grape Commission does, because the Secretary has the authority to remove every member of the Board, which is different. Could you explain a little bit the point made by opposing counsel that when he sought the public documents bearing on the commission that the Secretary had, the Secretary more or less said, I don't have any. Is that true? Is that the situation? It's my understanding that the Secretary, I believe, my recollection is, had a document which was not produced for privilege reasons. But the Secretary did not have much, clearly. Did he claim privilege? My recollection is that there was a deliberative privilege, Your Honor, but I'm not entirely sure. But that's my recollection. Do you think there are some documents there? Well, Your Honor, I think it's not our point, and I'm not trying to say by any means that there was a stack of material there. Our point here, though, is that we're dealing with structural issues of government. And in dealing with structural issues of government, it doesn't turn, the First Amendment doesn't turn on a particular management style. Yeah, we could have grapes covered by the First Amendment, pistachios not, oranges are, grapefruits aren't. Or even worse, Your Honor, grapes are covered by the First Amendment today because the Secretary attended the meeting yesterday. Grapes are not covered a week from now because the Secretary missed a meeting. I mean, that can't be. Or threw away the ads. Right, right, right. Didn't care to look. I mean, that can't be the way the First Amendment works here. And that's not the way the structure is. What the Supreme Court cares about here, and it's indicated in cases like this. May I point out, you've lost your Supreme Court majority. Those people that decided that case aren't there anymore. Well, Your Honor, I mean, the opinion in livestock marketing was written by Justice Scalia. And in the dissenters in that case. He lost his majority. Well, I don't know that that's, I don't think that's by any means true, Your Honor. Unless the new ones are going to agree with him. The dissenters in the livestock marketing case was Justice Souter. And I can't recall offhand who it was who joined Justice Souter, but there's a solid majority in the livestock marketing case. But in livestock marketing, there was Southworth, where Justice Kennedy wrote the opinion. What the courts say, it's about accountability. I mean, that's what the government speech doctrine is about. It's about accountability of the government. Well, one advantage of taking your view would be we could stop hearing all these cases industry by industry. Well, that's absolutely right. That would be an advantage. I'm not sure that's the reason to decide the case. Well, Your Honor, I do, though, think that there's a First Amendment principle in here, in that the First Amendment is not about micromanaging how the legislature or the executive branch goes about implementing a policy. It's about structural issues. And it's about whether the government controls. Let me give you a couple of examples here, Your Honor, that go to this question of the sort of day-to-day oversight and whether the government is actually involved in looking at the particular ad. If a mayor of a town, hypothetically, would have decided that there was a need to let folks know where the hospital was and called up a sign painter and said, you know, we really ought to put up a sign for the hospital. The sign painter said, glad to do it, and puts up a sign. And someone from the mayor's office doesn't go down and look at the sign before it goes up. It's still government speech. Or in Rust v. Sullivan, Your Honor, the Supreme Court held that, as it explained later in the Velazquez case, held that where you had a program, a federal program, dealing with family planning, and you had private doctors and private clinics that were implementing that program, dealing with family planning, that that was government speech. And when the doctors were talking to their patients about family planning issues, that that discussion was government speech. It wasn't a case in which there was somebody from the Department of Health and Human Services who was sitting in on the meetings with the patients, listening to the words or editing the words that were delivered. It was based on the structure. It was based on the fact that Congress had passed a statute and that the Department of Health and Human Services had implemented that statute and was thus accountable and, as the Supreme Court has noted in numerous cases, it was about the fact that if the public didn't like the message and was unhappy with it, they could throw the elected officials out and say, we want different elected officials. Which they just did. Excuse me? Which they just did. Yes. Well, Your Honor, but that is ultimately the political check, and that's where the most important basis for determining whether speech is government speech is whether that political authority exists. But with respect to the Table Crate Commission, it's not just the power to remove that exists, which was not present. I could wind it up in a minute, would you? Yeah, absolutely. Oh, I'm sorry, Your Honor. Just a couple more words. It was not just the power to remove that was present. There was the same grievance authority that was available in the – with respect to the Pistachio Commission. And the fact that the commission could hypothetically sue the commissioner is no response. We cite in footnote 15 of our brief lots of cases where government sues each other. And, in fact, just two weeks ago, the Supreme Court decided in Hawaii versus the Office of Hawaiian Affairs. So that is not by any means extraordinary. There are also CDFA policies with respect to what the ads say and the review of the ads. There's the audit authority, which is both financial and operational. So here, ultimately, there is no dispute that the CDFA has the power to control what the commission says. Plaintiff's argument is that the government has just been too passive. But that's not the test. So for these reasons, we would urge that the Court affirm the decision below. Thank you, Your Honor. Thank you, Your Honor. Very good, Your Honor. I think you're seven minutes over. We'll give you two minutes. Two minutes is final, I need. Okay. Very interesting thing that came up is that the Court said something about, you know, maybe the Table Gap Commission violates the First Amendment but not the Pistachio Commission. Well, the Supreme Court did the same thing with respect to tree fruit. It was constitutional. Mushrooms was not. It's, to me, you have to look at the statute itself to see what authority there is. They claim, well, they have the authority to audit the commission. They've never done it. They say that they have the power to remove every commission officer, I mean, every commission member, and therefore the ability to control. Control what? How does that control the advertisements? There's no provision in the statute that requires the commission whatsoever to provide any information to the secretary at all, unlike what was written in the statute with respect to the Pistachio Commission. The Pistachio Commission could not spend one penny without the secretary's concurrence. They couldn't run one ad by statute. They couldn't run one promotion program without the secretary's concurrence. It required a lengthy position paper before the crop year began as to what they were going to do. And here's the beauty of this. Section 65571, California Food and Ag Code, says the state is not liable for any acts or liabilities of the Table Grape Commission. So on the one hand, we want to say that they control, and therefore it's government speech. On the other hand, the state says, oh, we're not responsible for nothing. Well, that's the state's general position. Yes. Did the secretary claim the privilege when he ran through the documents? What the secretary claimed, and it's on page 27 of my brief, I asked for everything relating to ads, every document received from the commission regarding advertisements, promotions, lobbying activities, government relation activities, press releases, proposed drafts, all the same. CDFA responded by stating that it possessed a single document relating to possible legislative action, which CDFA considered exempt from the request, and that the department possessed bills submitted to the commission. The marketing branch of CDFA, they take every commission, sees what their budget is, and they collect a certain percentage of every commission's assessments for the marketing branch. That means general taxpayer revenues don't pay for the marketing branch of CDFA. The commissions do. So they send them bills. Your budget is X. You owe us Y for supposed oversight. But one more thing here is they charge the commission for the governmental oversight of it? For apparently whatever, yeah. For not doing anything. Well, that could be said about a lot of things in government. Right. That's maybe one of the reasons we have this economic crash. But it doesn't make the government any less the government because they're negligent in their duties, as long as they have the responsibility, which apparently you say they are collecting fees to exercise their responsibility, and then they're not doing it. What I'm saying, what I'm saying, I'm saying it twofold. They collect money from every commission regardless of what they do. Okay? A management fee. What? It's like their management fee. Yeah, like a management fee. They think they're bad managers. Yeah. But the position that I'm taking here is by statute the secretary is not authorized to get involved whatsoever, unless somebody files a grievance, and then they can be sued. Or they could audit their books, but they never have done it. But in the majority opinion in livestock marketing, they never mentioned LeBron. I can't find one citation of LeBron in the entire majority opinion. And secondly, at page 563 of that decision, it says the program is authorized in the basic message prescribed by federal statute. Okay, we have that by state statute here. And specific requirements for the promotion content are imposed by federal regulations promulgated after notice and comment. We have none of that here. There's been no APA, nothing. The secretary of agriculture, a politically accountable official, oversees the program, appoints and dismisses the key personnel, and retains absolute veto power over the advertisement's content right down to the wording. And Congress, of course, retains oversight authority, not to mention the ability to reform the program at any time. No more is required. When it says no more is required, it's not saying less can be required. It's not saying anything about whether less could be required. It said those things are enough. Yes, but they're claiming less can be required.  Less is oversight. All I'm saying is that a case that says these four points are enough is not a holding that three points wouldn't be enough also. But they're listing five points, and they say no more is required. Okay. Government control. And, by the way, in this court's case, which is cited in my reply brief, the coalition life case, Arizona versus life coalition, this court said that an essential element of government speech is the degree of control, state control. That's one case since Johans was decided where the courts addressed it. Thank you very much. Thank you both very much. That was an excellent argument on both sides. It will be an interesting case for us. And congratulations to you all, whoever wins or loses. Court will stand in recess for the day.
judges: Reinhardt, Noonan, McKeown